1

2

3

4

5

6

7            IN THE UNITED STATES DISTRICT COURT

8          FOR THE EASTERN DISTRICT OF CALIFORNIA

9    KENNETH LEE MARTINEZ,

10              Petitioner,            No. 2:06-cv-00831 ALA (HC )

11        vs.

12    ROSEANNE CAMPBELL, Warden,            <u>ORDER</u>

13              Respondent.

14    _____/

15         Pending before the Court is Petitioner Kenneth Lee Martinez' ("Petitioner") amended

16    application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(a) (Doc. No. 74), Roseanne

17    Campbell's ("Respondent") answer (Doc. No. 81), and Petitioner's traverse (Doc. No. 86).  For

18    the reasons discussed below, Petitioner's application is denied.

19                          **I**

20                          **A**

21         On December 20, 2002, a jury in the San Joaquin County Superior Court found Petitioner

22    guilty of the following offenses: count one, torture (Cal. Penal Code § 206); counts two, three,

23    four, five, and six, assault by means of force likely to produce great bodily injury or with a

24    deadly weapon (Cal. Penal Code § 245(a)(1)); count seven, corporal injury to a cohabitant (Cal.

25    Penal Code § 273.5), count eight, forcible rape (Cal. Penal Code § 261(a)(2)), count 9, forcible

26    oral copulation (Cal. Penal Code § 288a(c)), count eleven, criminal threats (Cal. Penal Code §

422), count twelve, dissuading a witness by force or threat (Cal. Penal Code § 136.1(c)(1)),

count thirteen, false imprisonment by violence (Cal. Penal Code § 236).  With regard to counts

seven, eight, and nine, the jury also found that Petitioner personally inflicted great bodily injury

under circumstances involving domestic violence (Cal. Penal Code § 12022.7(e)).  Petitioner

was acquitted on count ten, a second act of forcible oral copulation (Cal. Penal Code § 288a(c)).

The prosecution dismissed counts fourteen, fifteen, and sixteen, assault with the intent to commit

rape (Cal. Penal Code § 220).  *People v. Martinez*, 23 Cal. Rptr. 3d 508, 510 n.1 (Cal. Ct. App.

2005).

On February 3, 2003, the trial court sentenced Petitioner to state prison for a term of

fifty-four years, eight months to life, calculated as follows:

> 25 years to life on count 8, the principal term, pursuant to the "one
> strike" law (Pen. Code, § 667.61; undesignated section references
> are to the Penal Code), and imposed the same term on the
> enhancements to count 8 but stayed that term under section 654.[1]
> The court then imposed a consecutive sentence of 25 years to life
> on count 9, finding that the offenses charged in counts 8 and 9
> occurred on separate occasions. The court further imposed
> consecutive sentences of one year (one-third the middle term) on
> count 2, three years (the middle term) on count 12, and eight
> months (one-third the middle term) on count 13. Finally, the court
> imposed a life sentence on count 1 and upper terms on the
> remaining counts and enhancements (counts 3–6, four years; count
> 7, four years; the enhancement to count 7, five years; count 11,
> three years), but stayed these sentences under section 654.

---

[1]   California Penal Code § 654 provides:

(a) An act or omission that is punishable in different ways by
different provisions of law shall be punished under the provision
that provides for the longest potential term of imprisonment, but in
no case shall the act or omission be punished under more than one
provision. An acquittal or conviction and sentence under any one
bars a prosecution for the same act or omission under any other.

(b) Notwithstanding subdivision (a), a defendant sentenced
pursuant to subdivision (a) shall not be granted probation if any of
the provisions that would otherwise apply to the defendant
prohibits the granting of probation.

1

2    *People v. Martinez*, 83 Cal. Rptr. 3d 738, 742 (Cal. Ct. App. 2008); *see* Clerk's Transcript, Vol.

3    IV of IV at 1017-20; Reporter's Transcript, Vol. V of V at 1407-1413.

4                                                    **B**

5           On February 11, 2003, Petitioner filed a direct appeal from the trial court's judgment and

6    sentence to the California Court of Appeal for the Third Appellate District.  The California Court

     of Appeal summarized the facts as follows:[2]
7
                    On June 8, 2002,[3] R., the victim, and defendant, her live-in
8                   boyfriend, got into a physical fight at his workplace.  Both were
                    arrested and jailed.  R. bailed out that day, but defendant spent four
9                   days in jail.

10                  When released from jail, defendant went back to the home of R.
                    and her 12-year-old son in Stockton.  However, on June 14,
11                  defendant learned that the fight with R. at his workplace had cost
                    him his job.  Instead of going home, he went to a friend's house in
12                  Thornton.  Early the next day, defendant called R. to ask her to
                    come pick him up.
13
                    After R. got there, defendant burst out of a parked van, grabbed
14                  her by the hair, and dragged her into the van.  Keeping her trapped
                    inside, he accused her of making him lose his job, vandalizing his
15                  vehicle, and stealing his briefcase.  He struck her with a chain on
                    the head, back, and shoulders and kicked her repeatedly with
16                  steel-toed boots.

17                  Later in the day, defendant drove with R. back to her house.  When
                    he fell asleep, she left to look for her missing wallet.  She did not
18                  report defendant to the police at that point because she feared for
                    the safety of her son if she did so, and because the police had sided
19                  with defendant over her in the June 8  incident.  Furthermore,
                    defendant had disconnected the telephones in the house.
20
                    From Sunday, June 16, to Tuesday, June 18, defendant held R.
21                  hostage and beat her repeatedly, at different times using his fists,
                    his steel-toed boots, a star-shaped tire iron, a flashlight, and a
22                  metal nail puller. He also raped her and forced her to orally

23

24   _____

25          [2]     The factual findings of the Court of Appeal are presumed correct as Petitioner has
     not raised a challenge to their accuracy.  *See* 28 U.S.C. § 2254(e)(1).

26          [3]     All further dates are in 2002 unless otherwise stated.

                                                      3

copulate him three or four times.[4]  Throughout this period, he continued to berate her about his lost job; he also threatened to kill her and her family if she told anyone about what he was doing to her.

On June 17, R. went across the street to her neighbor M.G.'s house to get hamburger meat.  M.G. noticed R.'s face was bruised and asked her to stay, but R. said she could not because defendant would get mad at her.  M.G. urged R. to call the police, but R. said she did not want to get M.G. involved.

On the evening of June 18, defendant twice poured rubbing alcohol over R. while they were in the bathroom, then set pieces of toilet paper alight and threw them at her.  He told her he wanted her to die and to see her burn in hell.

Failing to set R. on fire the first time, defendant poured a bottle of hydrogen peroxide over her and told her to shower.  She could not undress or operate the shower because her hands were broken.  Defendant forced her in and poured shampoo on her head.  When he put her hands on her head, she screamed in extreme pain.  He ordered her to dress and put on makeup, but she could not.  He kept on hitting and kicking her.

Defendant then repeated the process, again trying and failing to set R. on fire, then forcing her into the shower.  He pulled her up by the arms, which had been broken in the course of his assaults.  He again demanded sex. R. felt sure she would die if she did not escape.

When defendant left the bathroom for a moment, R. ran naked out of the bathroom and across the street to M.G.'s house, where she was able to call 911.

The emergency room doctor observed that R. was bruised all over.  She had significant swelling and broken skin over her right temple, deeply bruised forearms, and a bony deformity in one arm.  X-rays revealed both forearms, a rib, and a leg bone were broken;

---

[4]     R.'s recollections about these incidents were not precise.  She told one officer she was forced to have sex with defendant three to four times.  She told another she had consensual sex with defendant once during this period, but the remaining times were nonconsensual.  She also remembered two incidents of forced oral copulation. (As noted, the jury convicted defendant of one such act but acquitted him of another.)

A rape examination done shortly after R.'s escape from captivity confirmed that she had had sex after Saturday, June 15.

4

1  the right forearm had multiple fractures.  R.'s lesions looked like
2  the result of being beaten with a crowbar or tire iron, as she told
   the doctor she was.

3  The prosecution also introduced the testimony of K.M. pursuant to
4  Evidence Code section 1109.  K.M., a former girlfriend of
   defendant's who had had a child with him, testified that on May 2,
5  1999, defendant unexpectedly came to her apartment.  During the
   ensuing conversation, he got mad at her, struck her in the face, and
6  damaged the apartment.  When she tried to leave, he grabbed her
   arm hard enough to cause a bruise.

7  At trial, R. repudiated her prior accounts inculpating defendant,
8  including her stories to the police and her preliminary hearing
   testimony.  She claimed she assaulted defendant repeatedly during
   the episode, while defendant hit and kicked her only once near the
9  end of the episode and only in self-defense.  According to R., she
10 was jealous about defendant's imagined infidelity and was
   drinking heavily throughout the episode.  She suffered almost all
11 her injuries either from falling off a gate when she jumped a fence
   at the Thornton residence or from falling off a ladder when trying
   to kick defendant.

12
13 In addition to presenting R.'s preliminary hearing testimony and
   the stories she had previously told police and others, the
14 prosecution impeached R.'s trial testimony by introducing the tape
   and transcript of her conversation with defendant and her
15 son-in-law during a jail visit after the preliminary hearing.  In that
   conversation,  defendant repeatedly apologized for what he had
16 done and told R. he loved and needed her, she repeatedly told him
   she loved and needed him, and they talked about how to get this
17 incident behind them and reunite. Her son-in-law said the two of
   them would have to "get a story going and … make sure it sounds
   right."

18
19 Defendant did not testify.

20 *Martinez*, 23 Cal. Rptr. 3d at 511-513.  Petitioner appealed to the California Court of Appeal on

21 the same grounds he raises herein.  The California Court of Appeal affirmed the judgment of

22 conviction.  *Id.* at 519.  Petitioner filed a petition for review before the California Supreme

23 Court.  It denied the petition without prejudice stating, "[p]etition for review denied without

24 prejudice to any relief to which defendant might be entitled after this court determines in *People*

25 *v. Black*, S126182, and *People v. Towne*, S125677, the effect of *Blakely v. Washington* (2004)

26 542 U.S. __ [159 L. Ed. 2d 403, 124 S.Ct. 2531], on California law."  *People v. Martinez*, No.

1   S131668, 2005 Cal. Lexis 4432, at *1 (Cal. Apr. 20, 2005).

2          In 2007, Petitioner filed a motion for a new sentencing hearing in the trial court.  The

3   trial court denied the motion citing *Cunningham v. California*, 549 U.S. 270 (2007).  *Martinez*,

4   83 Cal. Rptr. 3d at 742.  Petitioner appealed to the California Court of Appeal, Third Appellate

5   District.  *Id.*  In a reasoned opinion, the court affirmed.  *Id.* at 745.  The California Supreme

6   Court denied Petitioner's petition for review without prejudice to any relief to which defendant

7   might be entitled after the United States Supreme Court decides *Oregon v. Ice*, No. 07-901."

8   *People v. Martinez*, Case No. S167946, 2008 Cal. LEXIS 14391 (Cal. Dec. 10, 2008).

9   Accordingly, Petitioner exhausted his federal constitutional claims in state court.

## II

11          Petitioner's application sets forth eight claims for relief.  Petitioner's application was

12   filed after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996

13   ("AEDPA").  Under AEDPA, a federal court has limited power to grant habeas corpus relief

14   under § 2254(d).  AEDPA provides that:

15          (d)     An application for a writ of habeas corpus on behalf of a person in custody
                    pursuant to the judgment of a State court shall not be granted with respect
16                  to any claim that was adjudicated on the merits in State court proceedings
                    unless the adjudication of the claim—

18                  (1)     resulted in a decision that was contrary to, or involved an
                            unreasonable application of, clearly established Federal law, as
                            determined by the Supreme Court of the United States; or

20                  (2)     resulted in a decision that was based on an unreasonable
                            determination of the facts in light of  the evidence presented in the
                            State court proceeding.

22   28 U.S.C. § 2254(d).  Under § 2254(d)(1), "[a] state court decision is 'contrary to' our clearly

23   established precedents if it 'applies a rule that contradicts the governing law set forth in

24   [Supreme Court] cases,' or if it 'confronts a set of facts that are materially indistinguishable from

25   a decision of this Court and nevertheless arrives at a result different from our precedent." *Early*

26   *v. Packer*, 537 U.S. 3, 8 (2002) (citing and quoting *Williams v. Taylor*, 529 U.S. 362, 405-06

1   (2000)).

2       Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant

3   habeas corpus relief if the state court identified the correct governing legal principle from the

4   Supreme Court's decisions, but unreasonably applied that principle to the facts of the prisoner's

5   case. *Williams*, 529 U.S. at 413. A petitioner bears the burden of showing that the state court

6   applied Supreme Court precedent in an objectively unreasonable manner. *Price v. Vincent*, 538

7   U.S. 634, 641 (2003) (citation omitted). A federal habeas court, however, "may not issue the

8   writ simply because that court concludes in its independent judgment that the relevant state-court

9   decision applied clearly established federal law erroneously or incorrectly. Rather, that

10   application must also be unreasonable." *Williams*, 529 U.S. at 411; *see also Lockyer v. Andrade*,

11   538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its 'independent review

12   of the legal question,' is left with a 'firm conviction' that the state court was 'erroneous'").

13       A federal court must evaluate a claim pursuant to § 2254(a) by reviewing the last

14   reasoned state court decision. *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000)

15   (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)). In this case, the California Court of

16   Appeal's decisions denying Petitioner's direct appeal are the last reasoned opinions for the

17   claims Petitioner raises herein. *See Martinez*, 23 Cal. Rptr. 3d at 508, and *Martinez*, 83 Cal.

18   Rptr. 3d 738, modified by *People v. Martinez*, Case No. C055549, 2008 Cal. App. LEXIS 1666

19   (Cal. Ct. App. Oct. 22, 2008), review denied by *People v. Martinez*, Case No. S167946, 2008

20   Cal. LEXIS 14391 (Cal. Dec. 10, 2008). Therefore, this Court must evaluate the California

21   Court of Appeal's 2005 and 2008 decisions.

22                                 **III**

23                                 **A**

24       Petitioner first contends that the his conviction violated the Fifth Amendment's

25

26

1   protection against double jeopardy.  App. at 7.[5]  Petitioner asserts that his conviction for five

2   assault with deadly weapons counts, corporal injury on a cohabitant, forcible rape, forcible oral

3   copulation, criminal threats, dissuading a witness by force or fear, and false imprisonment by

4   violence were simply lesser included offenses of his conviction of torture and being convicted on

5   torture made up the elements of the other violations.  Accordingly, Petitioner contends, he was

6   convicted of the greater and lesser offenses and reversal of counts two through thirteen is

7   required.

8          The Double Jeopardy Clause provides that no person shall "be subject for the same

9   offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  When analyzing a

10  double jeopardy claim, "[t]he applicable rule is that, where the same act or transaction

11  constitutes a violation of two distinct statutory provisions, the test to be applied to determine

12  whether there are two offenses or only one, is whether each provision requires proof of a fact

13  which the other does not.  *Blockburger v. United States*, 284 U.S. 299, 304 (1932); *see also*

14  *United States v. Dixon*, 509 U.S. 688, 696 (1993) (stating "[t]he same-elements test, sometimes

15  referred to as the Blockburger test, inquires whether each offense contains an element not

16  contained in the other; if not, they are the 'same offence' and double jeopardy bars additional

17  punishment and successive prosecution").  "[T]he Blockburger test is satisfied, notwithstanding

18  a substantial overlap in the proof offered to establish the crimes."  *Iannelli v. United States*, 420

19  U.S. 770, 786 n.17 (1975).

20         Count one, torture, California Penal Code § 206 reads as follows:

21                 Every person who, with the intent to cause cruel or extreme pain
                   and suffering for the purpose of revenge, extortion, persuasion, or
22                 for any sadistic purpose, inflicts great bodily injury as defined in
                   Section 12022.7 upon the person of another, is guilty of torture.
23                 The crime of torture does not require any proof that the victim
                   suffered pain.

24

25              [5]      Petitioner's application is not numbered in a coherent manner.  The Court has
    applied numbers to each of the pages from 1 to 53 and will herein refer to the sequential page
26  number.

                                                    8

1

2  The Judicial Council of California Criminal Jury Instructions for California Penal Code § 206

3  provides:

4  > To prove that the defendant is guilty of this crime, the People must
   > prove that:

5

6  > 1. The defendant inflicted great bodily injury on someone else;

7  > AND

8  > 2. When inflicting the injury, the defendant intended to cause cruel
   > or extreme pain and suffering for the purpose of revenge,
   > extortion, persuasion, or for any sadistic purpose.

9

10  Judicial Council Of California Criminal Jury Instruction 810 (Fall 2008).

11                                         **1**

12      Petitioner contends that his conviction on counts two, three, four, five, and six—assault

13  by means of force likely to produce great bodily injury or with a deadly weapon (Cal. Penal

14  Code § 245(a)(1))—violates the Double Jeopardy Clause.[6]  Counts two through six require that

15  the prosecution prove that defendant used force with a weapon.  The first element, that the

16  defendant acted with a deadly weapon, in counts two through six  is an additional element not

17  contained in count one.  *See* Judicial Council Of California Criminal Jury Instruction 875 (Fall

18  2008).  The conviction of Petitioner on counts two through six did not violate the Double

19  Jeopardy Clause.

20      In maintaining that count one includes the elements contained in counts two through six,

21  _____

22      [6]      This statute reads:

23      > Any person who commits an assault upon the person of another
   > with a deadly weapon or instrument other than a firearm or by any

24  > means of force likely to produce great bodily injury shall be
   > punished by imprisonment in the state prison for two, three, or four

25  > years, or in a county jail for not exceeding one year, or by a fine
   > not exceeding ten thousand dollars ($10,000), or by both the fine

26  > and imprisonment. Cal. Pen. Code § 245(a)(1) (2005).

1    Petitioner appears to be confusing the portion of section 245 of which he was convicted.  Section

2    245(a)(1) permits conviction of a person who commits an assault upon another "with a deadly

3    weapon" *or* "by any means of force likely to produce great bodily injury."  In this matter,

4    however, the record shows that Petitioner's conviction was based on the use of deadly

5    weapon—not merely using force likely to produce great bodily injury.  In its instructions on

6    assault with a deadly weapon, the trial court explained what weapon was used:  "The deadly

7    weapon alleged in Count Two is a chain. . . . The deadly weapon alleged in Count Three is a

8    flashlight. . . . The deadly weapon alleged in Count Four is a crowbar. . . . The deadly weapon

9    alleged in Count Five is a star tire iron. . . . The deadly weapon alleged in Count Six is fire."

10   Clerk's Transcript, Vol. III of IV at 609-10; Reporter's Transcript Vol. V of V at 1178-79.

11   Because Petitioner's convictions for violating California Penal Code § 245(a)(1), counts two

12   through six,  required proof of an additional element—i.e., use of a deadly weapon—Petitioner's

13   conviction does not violate the Double Jeopardy Clause and Petitioner is not entitled to federal

14   habeas relief for this claim.

15                                            **2**

16          Petitioner's arguments also fail as to count seven—corporal injury to a cohabitant,

17   California Penal Code § 273.5[7],   count eight—forcible rape, California Penal Code § 261(a)(2)[8],

18   _____

19          [7]      This statute reads, in pertinent part:

20          Any person who willfully inflicts upon a person who is his or her .
     . . cohabitant . . . corporal injury resulting in a traumatic condition,
21   is guilty of a felony.  Cal. Pen. Code § 273.5(a).

22

23          [8]      This statute reads:

24          (a) Rape is an act of sexual intercourse accomplished with a person
     not the spouse of the perpetrator, under any of the following
25   circumstances:
     . . .
26          (2) Where it is accomplished against a person's will by means of

count nine—forcible oral copulation (Cal. Penal Code § 288a(c))[9], count eleven—criminal

threats (Cal. Penal Code § 422)[10], count twelve—dissuading a witness by force or threat (Cal.

Penal Code § 136.1(c)(1))[11], and count thirteen—false imprisonment by violence (Cal. Penal

---

force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another.  Cal. Pen. Code § 261(a)(2).

[9]    The applicable part of this statute reads:

(c) . . . .

 (2) Any person who commits an act of oral copulation when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person shall be punished by imprisonment in the state prison for three, six, or eight years.  Cal. Pen. Code § 288a(c).

[10]    This statute reads:

Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison.

For the purposes of this section, "immediate family" means . . . any other person who regularly resides in the household, or who, within the prior six months, regularly resided in the household.  Cal. Pen. Code § 422.

[11]    This statute reads:

(c) Every person doing any of the acts described in subdivision (a)

Code § 236).[12]

Count seven requires that the prosecution prove that the infliction of physical injury was on a current or former cohabitant.  This is not an element required to prove torture as charged in count one.  Count eight requires proof that the defendant engaged in sexual intercourse with the victim.  This is not an element required in count one.  Count nine requires proof that the defendant committed an act of oral copulation.  This is not an element of the crime of torture as alleged in count one.  Count eleven requires proof that the defendant made threats.  This is not required to prove the crime of torture.  Count twelve requires proof that the defendant prevented or dissuaded a witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law.  This conduct is not a required element for the crime of torture.  Count thirteen requires proof that the defendant violated the personal liberty of another.  Proof of torture can be demonstrated without proof of this element.

Accordingly, to prove counts seven through nine and eleven through thirteen, the prosecution must present evidence of elements not required to prove the defendant committed torture as defined in California Penal Code § 206.  Accordingly, none of the offenses alleged in the counts of seven through nine and eleven through thirteen is a lesser offense of torture.  Thus, Petitioner is not entitled to federal habeas relief for this claim.

---

or (b) knowingly and maliciously under any one or more of the following circumstances, is guilty of a felony punishable by imprisonment in the state prison for two, three, or four years under any of the following circumstances:

(1) Where the act is accompanied by force or by an express or implied threat of force or violence, upon a witness or victim or any third person or the property of any victim, witness, or any third person.  Cal. Pen. Code § 136.1(c)(1).

[12]    This statute reads:

False imprisonment is the unlawful violation of the personal liberty of another.  Cal. Pen. Code § 236 (2005).

**B**

Petitioner's next contends that the trial court's failure to provide a unanimity instruction violated his right to due process.  Petitioner asserts:

> Conviction obtained by a violation of the protection against due process of law, in violation of the fourteenth amen. [sic]  As stated above, petitioner was convicted of torture, five assault with a deadly weapon counts, corporal injury on a cohabitant, forcible rape, forcible oral copulation, criminal threats, dissuading a witness by force, and false imprisonment by violence . . . The trial court erred in not instructing the jury that they must unanimously agree on the particular acts on which they relied for the conviction for every offense . . . Accordingly, failure to instruct the jury that they must unanimously agree on the particular acts which formed the basis for their conviction allowed the jury to find appellant guilty of each offense without unanimously agreeing on the act.

App. at 7, 9 (ellipses in original).  Petitioner contends that the trial court had a *sua sponte* duty to instruct the jury with  CALJIC No. 17.01.[13]  App. at 7, 9-10.

Generally, under California law, a jury verdict in a criminal case must be unanimous. *See People v. Collins*, 131 Cal. Rptr. 782 (Cal. 1976), *cert.* denied, 429 U.S. 1077 (1977).  A unanimity instruction is required when a conviction on a single count could be based on two or more discrete criminal events.  *See People v. Perez*, 26 Cal. Rptr. 2d 691, 696-97 (Cal. 1993). The instruction seeks "to eliminate the danger that the defendant will be convicted even though

---

[13]    CALJIC No. 17.01 states:

> The defendant is accused of having committed the crime of [in Count ]. The prosecution has introduced evidence for the purpose of showing that there is more than one [act] [or] [omission] upon which a conviction [on Count ] may be based. Defendant may be found guilty if the proof shows beyond a reasonable doubt that [he] [she] committed any one or more of the [acts] [or] [omissions]. However, in order to return a verdict of guilty [to Count ], all jurors must agree that [he] [she] committed the same [act] [or] [omission] [or] [acts] [or] [omissions]. It is not necessary that the particular [act] [or] [omission] agreed upon be stated in your verdict.

1   there is no single offense which all the jurors agree the defendant committed.'" *People v. Russo*,

2   108 Cal. Rptr. 2d 436, 441 (Cal. 2001) (citations omitted).

3       In this case, however, the unanimity instruction was not required because the events over

4   the three-day period constituted a continuous course of conduct.  *See People v. Stankewitz,* 270

5   Cal. Rptr. 817, 835  (Cal. 1990).  "The 'continuous conduct' rule applies when the defendant

6   offers essentially the same defense to each of the acts, and there is no reasonable basis for the

7   jury to distinguish between them."  *Id.*  Petitioner's crimes against the victim occurred from

8   Sunday, June 16 to Tuesday, June 18.  Petitioner's only defense was that the victim recanted at

9   trial.  Thus, the continuous conduct rule applies to Petitioner's conviction.

10      Moreover, a challenge to a jury instruction solely as an error under state law does not

11  state a claim cognizable in a federal habeas corpus action.  *See Estelle v. McGuire*, 502 U.S. 62,

12  71-72 (1991) ("the fact that the instruction was allegedly incorrect under state law is not a basis

13  for habeas  relief").  The Constitution does not require unanimity in a jury verdict.  *Schad v.*

14  *Arizona*, 501 U.S. 624, 634 n.5 (1991); *Apodaca v. Oregon*, 406 U.S. 404, 410-413 (1972).

15  "[T]he requirement for jury unanimity in a criminal prosecution is a state constitutional

16  requirement.  The United States Supreme Court has never held jury unanimity to be a requisite

17  of due process of law."  *People v. Vargas*, 110 Cal. Rptr. 2d 210, 248 (Cal. 2001) (citation and

18  internal quotations omitted).

19      A specific unanimity instruction is required only when it appears that "'there is a genuine

20  possibility of jury confusion or that a conviction may occur as the result of different jurors

21  concluding that the defendant committed different acts.'"  *United States v. Anguiano*, 873 F.2d

22  1314, 1319 (9th Cir. 1989).  Here, the evidence presented a clear story of what happened to the

23  victim and the evidence of Petitioner's guilt was overwhelming.  Accordingly, the trial court's

24  failure to give a unanimity instruction did not violate the Constitution.  Thus, the California

25  Court of Appeal's rejection of Petitioner's unanimity claim was not contrary to, or an objectively

26  unreasonable application of, any clearly established Federal law as determined by the United

14

1    States Supreme Court.  *See* 28 U.S.C. § 2254(d).

2                                           **C**

3          Petitioner's third basis for habeas relief contends that the California's torture statute,

4    California Penal Code § 206, is preempted by the Convention Against Torture, 1465 U.N.T.S.

5    85.  He maintains that his conviction violates due process under the Fourteenth Amendment.

6    App. at 8, 10.[14]  "[T]he Supremacy Clause, U.S. Const., Art. VI, cl. 2, invalidates state laws that

7    'interfere with, or are contrary to,' federal law.  *Hillsborough County v. Automated Med. Labs.,*

8    *Inc.*, 471 U.S. 707, 712 (1985) (quoting *Gibbons v. Ogden*, 9 Wheat. 1, 211 (1824) (Marshall,  C.

9    J.)).  As explained by the California Court of Appeal, the Convention Against Torture outlaws

10   acts committed under the color of law.  *See* 18 U.S.C. § 2340 ("'torture' means an act committed

11   by a person acting under the color of law . . .").  Petitioner's acts were  not committed while

---

12         [14]     Petitioner's argument in this respect reads as follows:

13

14                Conviction obtained by a violation of the protection against due
                 process of law, in violation of the fourteenth amendment.
15               Petitioner (Martinez) was convicted of torture Penal Code Section
                 206 . . .  A state law can be invalidated if the law is found to be
16               preempted by federal law, a state statute conflicts with federal law
                 and is consequently invalid if it stands as an obsticle [sic] to the
17               accomplishment and execution of the full congressional purpose
                 and objectives of the federal enactment . . . It does not matter
18               weather [sic] the state legislature intended to hinder federal law.
                 Prior to Californias [sic] electorate defining this new crme [sic] of
19               torture, the United States had signed, the Convention Against
                 Torture and Other Cruel, Inhuman or Degrading Treatment or
20               Punishment. (CAT).  Californias [sic] torture statute applies both
                 state and non-state actors and it fails to properly define torture as
21               required by CAT.
22
                 Similarly, congress, by its specific definition of the crime of
23               torture and promise to regulate those acts within its borders, has
                 fully covered the field and preempted any new definition of the
24               crime. . . . Accordingly, Penal Code Section 206 is invalid and
                 appellants conviction for torture must be reversed.
25
                 App. at 8, 10 (ellipses in original).
26

1   acting under the color of law.  Thus, the Convention Against Torture does not apply to the events

2   that led to his conviction.  Because the Convection Against Torture does not apply to Petitioner's

3   actions, California Penal Code § 206 neither interferes with nor is contrary to any federal law.

**D**

5   Petitioner argues in his fourth claim that the trial court's use of CALJIC No. 2.50.02

6   violated his rights under the Fifth, Sixth, and Fourteenth Amendments because the jury might

7   have believed that they could convict Petitioner based on a preponderance of the evidence

8   standard rather than the beyond a reasonable doubt standard.  App. at 8, 10-11.

9   CALJIC No. 2.50.02, provides as follows:

> Evidence has been introduced for the purpose of showing that the
> defendant engaged in an offense involving domestic violence on
> one or more occasions other than that charged in the case.
>
> . . . .
>
> If you find that the defendant committed a prior offense involving
> domestic violence, you may, but are not required to, infer that the
> defendant had a disposition to commit other offenses involving
> domestic violence.
>
> If you find that the defendant had this disposition, you may, but are
> not required to, infer that he is likely to commit and did commit
> the crime of which he is accused.
>
> However, if you find by a preponderance of the evidence that the
> defendant committed a prior crime or crimes involving domestic
> violence, *that is not sufficient by itself to prove beyond a*
> *reasonable doubt that he committed the charged offenses*.  The
> weight and significance, if any, are for you to decide.  You must
> not consider the evidence for any other purpose.

21   Reporter's Transcript, Vol. V of V at 1175-76 (emphasis added).  To obtain habeas corpus relief,

22   Petitioner must show that the trial court's "ailing instruction by itself so infected the entire trial

23   that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72.  Further, "It is well

24   established that the instruction 'may not be judged in artificial isolation,' but must be considered

25   in the context of the instructions as a whole and the trial record." *Id.* (citation omitted).

26   Petitioner's claim is not meritorious.  CALJIC No. 2.50.02 clearly distinguishes between

1   the burden of proof for finding that Petitioner committed a prior act of domestic violence, and

2   the required proof for a finding that Petitioner committed the charged offense.  Specifically, the

3   instruction provides that a jury may *not* find Petitioner guilty of the charged offenses simply

4   because it finds that he committed a prior act of domestic violence.  The trial court instructed the

5   jury that they were required to find defendant guilty beyond reasonable doubt:

> A defendant in a criminal action is presumed to be innocent until
> the contrary is proved.  And in case of a reasonable doubt whether
> his guilt is satisfactorily shown, he is entitled to a verdict of not
> guilty.  This presumption *places upon the People the burden of
> proving him guilty beyond a reasonable doubt.*

9   Reporter's Transcript, Vol. V of V at 1177 (emphasis added).  Further, Petitioner's counsel's

10  closing argument stated that the jury had to find—beyond a reasonable doubt—that Petitioner

11  committed each charge: "Remember reasonable.  Reasonable doubt.  Each charge has -- every

12  single one of those charges has -- that's why you have verdict sheets and lesser included charges

13  in these.  You are supposed to believe that the defendant, beyond a reasonable doubt, committed

14  each crime and each element of those crimes."  *Id.* at 1278; *see id.* at 1296, 1299.  Petitioner's

15  counsel also contrasted the difference between the preponderance standard the jury would apply

16  per CALJIC 2.50.02 and the reasonable doubt standard they were required to apply for the

17  charges against Petitioner:

> Now you're going to get another instruction, it's unusual -- usually
> you don't get it in a criminal trial.  It's called preponderance of the
> evidence, how you do something.  And that has to do -- and the
> judge told you specifically, it has to do with how Ms. Miller came
> up and talked about a prior incident, when were you slapped and
> kicked.  That goes only as to whether you believe it or not.  He's
> not charged with that.  That goes to whether you believe that
> incident happened or not.  That's kind of helpful in a couple of
> ways.  Number one, it shows you the difference in what the
> standards are for say civil cases in a lot of things.  There's
> preponderance, and then the much more difficult and higher
> standard is beyond a reasonable doubt in a criminal case.

*Id.* at 1288.  The California Court of Appeal's rejection of this claim was neither contrary to, nor

an unreasonable application of, clearly established Federal law.  Petitioner is not entitled to

1   federal habeas relief for this claim.

2   **E**

3       Petitioner further contends that California Penal Code § 206 is unconstitutionally vague.

4   App. at 12-13. Petitioner argues that, as applied in this action, it is impossible for a court to

5   determine whether torture is a continuous conduct offense or a single incident that requires a

6   unanimity instruction. *Id.* The United States Constitution requires that "laws give the person of

7   ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act

8   accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). California Courts have

9   rejected the notion that Section 206 is void-for-vagueness. *See People v. Aguilar,* 68 Cal. Rptr.

10   2d 619, 624 (Cal. 1997) (holding that the meaning of "torture" is not unconstitutionally vague

11   notwithstanding its use of the words "cruel" or "extreme" pain and "sadistic purpose"); *People v.*

12   *Talamantez,* 215 Cal. Rptr. 542, 550 (Cal. App. 1985) (rejecting a similar challenge to the

13   torture-murder statute).

14       As explained in Section II B, above, it was not error for the jury to consider the events

15   from Sunday, June 16, to Tuesday, June 18 to find Petitioner guilty of torture. Therefore, as

16   applied to Petitioner, § 206 is constitutional. Further, Petitioner does not cite, nor is this court

17   aware of, any United States Supreme Court precedent which calls into question the

18   constitutionality of § 206. Further, Petitioner has not demonstrated that the statute was vague as

19   applied to the facts. As such, this court cannot say that § 206 is contrary to clearly established

20   United States Supreme Court precedent or an unreasonable determination thereof. The

21   California Court of Appeal correctly rejected this claim.

22   **F**

23       In Petitioner's sixth ground for relief, he argues that the consecutive terms imposed for

24   the sexual assaults—counts eight and nine, forcible rape and oral copulation,

25   respectively—violated his due process rights under the Fourteenth Amendment. App. at 13-14.

26   The trial court found that the offenses charged in counts eight and nine occurred on separate

occasions.  It sentenced Petitioner to consecutive terms of 25 years to life for counts eight and nine pursuant to California Penal Code § 667.61.[15]   Petitioner asserts that "the sexual acts occurred during one episode, against a single victim, at a single location and therefore it was error for the trial court to sentence appellant to two consecutive life terms for the sex offenses." *Id.* at 13.  Petitioner contends that he should have only received one life sentence because the forcible rape and oral copulation were committed on a single occasion.

        To the extent one can interpret Petitioner's claims as asserting a violation of his Sixth Amendment right to a jury determination of any fact that increases the maximum punishment authorized for a particular offense under *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004), they lack merit.  In January of this year, the Supreme Court decided *Oregon v. Ice*, No. 07-901, 555 U.S. ___, 129 S. Ct. 711 (Jan. 14, 2009). In *Ice*, the Court answered the question of whether a trial court errs in making a finding, during sentencing and after a jury conviction, that the defendant's offenses constituted a "separate incident." *Id.* at 715.

        The defendant in *Ice* "entered an apartment in the complex he managed and sexually assaulted an 11-year-old girl." *Id.*   The jury convicted him for six crimes, including two incidents of first-degree burglary. *Id.*  The trial court found, at sentencing, "that the two burglaries constituted 'separate incident[s].'" *Id*. at 715.  As a result of this finding, the judge had the discretion, under Oregon law, to impose consecutive sentences. *Id.* at 716.  In his appeal, *Ice* argued that the facts permitting the imposition of consecutive sentences should have been submitted to the jury. *Id.*  The Supreme Court disagreed. *Id.* at 719.  It upheld the Oregon statute that assigned this limited fact finding, in the context of a sentencing determination, to trial judges. *Id.*

---

        [15]     The finding that the offenses occurred on a single or separate occasion was necessary because at the time of the offenses, section 667.61(g) provided: "The term specified in subdivision (a) or (b) shall be imposed on the defendant once for any offense or offenses committed against a single victim during a single occasion." *Martinez*, 83 Cal. Rptr. 3d at 743.

1    Here we have a similar situation.  The California Supreme Court has held that "for the

2    purposes of Penal Code section 667.61, subdivision (g), sex offenses occurred on a "single

3    occasion" if they were committed in close temporal and spatial proximity."  *People v. Jones*, 104

4    Cal. Rptr. 2d 753, 759 (Cal. 2001).   Petitioner was convicted for forcibly raping the victim and

5    forcible oral copulation.  The evidence showed that these events occurred on Sunday and

6    Monday.  This is not in close temporal proximity.  Further, the events occurred in two areas of

7    the house—the bedroom and bathroom.  This means that the offenses were not committed in

8    close spatial proximity.  The record shows further that the victim was not permitted to travel in

9    between the two rooms without Petitioner's consent.  *See* Reporter's Transcript, Vol. V of V at

10   1409-10.  In light of *Ice*, these facts support the trial court's finding that the events occurred on

11   separate occasions and that  the imposition of consecutive sentences was proper.  Accordingly,

12   the California Court of Appeal correctly rejected this constitutional claim.

13                                                      **G**

14   Petitioner's seventh contention is that the trial court's admission of the victim's

15   out-of-court statements violated the Confrontation Clause of the Sixth Amendment under

16   *Crawford v. Washington*, 541 U.S. 36 (2004).  Petitioner asserts that the Confrontation Clause

17   was violated when the prosecution used the victim's out-of-court statements to impeach her

18   testimony at trial.

19   Out-of-court testimonial statements against a defendant at trial violate the confrontation

20   clause unless the declarant is unavailable and the defendant had a prior opportunity to

21   cross-examine the declarant.  *Id.* at 66-68.  But "when the declarant appears for

22   cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his

23   prior testimonial statements. . . . The Clause does not bar admission of a statement so long as the

24   declarant is present at trial to defend or explain it."  *Id.* at 59 n.9.

25   Petitioner has failed to demonstrate that the admission of the victim's out-of-court

26   statements violated his rights under the Sixth Amendment.  The victim appeared at trial and was

1    available for cross-examination.  In fact, during her testimony, the victim recanted her prior

2    statements that implicated Petitioner.  The prosecution impeached the victim's testimony by

3    using the victim's out-of-court statements at the preliminary hearing, as well as her statements to

4    an emergency operator, emergency medical personnel, and the police.  The admission of the

5    victim's out-of-court statements did not violate the Confrontation Clause because the declarant

6    was present at trial, testified, and was subject to cross-examination.

7                                                **H**

8            In his eighth claim, Petitioner asserts that the imposition of consecutive and upper term

9    sentences violated his right to trial by jury under the Sixth Amendment.  Petitioner was given

10   consecutive twenty-five to life sentences for counts eight and nine, full-term consecutive

11   determinate sentences for counts two, twelve, and thirteen, and aggravated terms for counts three

12   through seven and eleven.  Petitioner also argues his consecutive and upper term sentences

13   contravene are contrary to the Supreme Court's decision in *Blakely*, 542 U.S. 296.

14           As discussed in Section F, above, Petitioner's argument that his Sixth Amendment rights

15   were violated because the trial court determined that counts eight and nine occurred on separate

16   occasions fails.  In *Ice*, the Supreme Court upheld an Oregon statute assigning limited fact

17   finding, in the context of a sentencing determination, to trial judges.  129 S. Ct. at 719.  In *Jones*,

18   the California Supreme Court held that sex offenses occur on a "'single occasion' if they were

19   committed in close temporal and spatial proximity."  104 Cal. Rptr. 2d at 759.  Thus, the facts

20   of this case—showing that the events supporting counts eight and nine occurred on different

21   days—and the Supreme Court's holding in *Ice* support the trial court's imposition of consecutive

22   sentences.  Accordingly, the California Court of Appeal correctly rejected this constitutional

23   claim.

24           Petitioner also challenges the trial court's imposition of consecutive sentences for counts

25   two (assault with a deadly weapon (a chain)), Cal. Penal Code § 245(a)(1)), twelve (dissuading a

26   witness by force or threat, Cal. Penal Code § 136.1(c)(1)), and thirteen (false imprisonment by

violence (Cal. Penal Code § 236)).   In imposing the consecutive sentences for these offenses, the

trial court stated, regarding count two, "this crime involved a separate act of violence and was

committed at a different time and place."   Reporter's Transcript, Vol. V of V at 1410.   The trial

court explained the consecutive sentence for count twelve as follows:

> This offense was not incidental to the defendant's intent to commit
> the offenses to which this offense shall run consecutive.  The
> defendant's criminal objective in committing this offense was to
> prevent the report of the other offenses.  This represents a separate
> objective under California Rule of Court 4.425.  Subsequently, The
> Court imposes a consecutive term.

*Id.*  And, finally, the trial court explained why it imposed a consecutive sentence for count

thirteen:

> [I]t finds that the fact of the defendant's prior domestic violence
> incident involving Kathy Miller is a factor in aggravation pursuant
> to Rule of Court 4.40.  And the Court  notes that during that event,
> the defendant had grabbed Ms. Miller and wouldn't let her go,
> another act of false imprisonment.

*Id.* at 1410-11.   The California Court of Appeal affirmed the imposition of the consecutive

sentences because: "[t]hese sentences were ordered to run consecutively under [California Penal

Code §] 669.[16]   There was no right to a jury trial on facts used to justify these consecutive

sentences." *Martinez*, 83 Cal. Rptr. 3d at 744 (citing *People v. Black*, 62 Cal. Rptr. 3d 569, 585-

86 (2007)).   *Black* was later overruled by *Cunningham*, 549 U.S. 270, on other grounds.

Petitioner argues that the imposition of consecutive sentences violates *Blakely*, 542 U.S. 296.

---

[16]    The pertinent portion of § 669 reads:

> When any person is convicted of two or more crimes, whether in
> the same proceeding or court or in different proceedings or courts,
> and whether by judgment rendered by the same judge or by
> different judges, the second or other subsequent judgment upon
> which sentence is ordered to be executed shall direct whether the
> terms of imprisonment or any of them to which he or she is
> sentenced shall run concurrently or consecutively.

1   However, *Blakely* addressed a court's imposition of a sentence above the statutory maximum.

2   *Id.* at 301.  *Blakely* does not apply to this case because consecutive sentencing was within the

3   statutory maximum sentence that the trial court was authorized to impose based on the jury's

4   verdict.  Petitioner fails to raise any argument that suggests the Court of Appeal's decision was

5   contrary to, or an unreasonable application of a clearly established federal law as determined by

6   the Supreme Court of the United States.

7        The third prong of Petitioner's eighth contention also fails.  Petitioner maintains that the

8   upper term sentences imposed by the trial court, although stayed, violated his rights under the

9   Sixth Amendment because the trial court did not properly explain why he sentenced Petitioner to

10  upper terms for counts three through seven and eleven.  The trial judge stated that based on his

11  twenty years of experience in the criminal justice system, Petitioner's actions were "as bad as it

12  gets without somebody being killed."  Reporter's Transcript, Vol. V of V at 1407.  Based on that

13  reasoning, the trial court imposed upper term sentences.  Petitioner asserts that the imposition of

14  upper terms was not supported by facts found by a jury beyond a reasonable doubt.  Because the

15  trial court stayed the imposition of the upper term sentences, any error was harmless.

16       Harmless and insignificant constitutional errors do not require the automatic reversal of a

17  conviction if the error was harmless beyond a reasonable doubt.  *Chapman v. California*, 386

18  U.S. 18, 22 (1967).  Only a "structural error" requires automatic reversal of a conviction.  *See*

19  *Washington v. Recuenco*, 548 U.S. 212, 218-22 (2006) (failure to submit a sentencing factor to

20  the jury is not a "structural error."); *Rose v. Clark*, 478 U.S. 570, 579 (1986) ("[I]f the defendant

21  had counsel and was tried by an impartial adjudicator, there is a strong presumption that any

22  other [constitutional] errors that may have occurred are subject to harmless-error analysis.").

23  Furthermore, a Sixth Amendment error may be found harmless if there is overwhelming

24  evidence supporting the sentence enhancing fact finding the trial court undertook.  *United States*

25  *v. Riccardi*, 405 F.3d 852, 875 (2005).

26       Given the evidence against Petitioner, the jury would have likely found the his offenses

23

1    involved such great violence to justify the enhancements.  More importantly, however, the upper

2    term sentences have been stayed and are "upper term" in name only.  The alleged error was

3    harmless.

4                                                        **I**

5          Petitioner's final contention is that the police and prosecution conspired to suppress

6    medical reports and the sexual examination report performed on the victim and Petitioner.

7    Petitioner asserts that the suppressed medical reports and sexual assault examinations prove his

8    innocence on counts one (torture), eight (forcible rape), and nine (forcible oral copulation).

9    Petitioner maintains that the suppression of this evidence violated his due process rights under

10   the Fourteenth Amendment.

11         The suppression of exculpatory violates the due process clause regardless of whether the

12   prosecution acted in good faith.  *Brady v. State of Maryland*, 373 U.S. 83, 87 (1963).  Under

13   *Brady*, "suppression by the prosecution of evidence favorable to an accused . . . violates due

14   process where the evidence is material either to guilt or to punishment, irrespective of the good

15   faith or bad faith of the prosecution."  *Id.* at 87.  "The materiality standard for Brady claims is

16   met when 'the favorable evidence could reasonably be taken to put the whole case in such a

17   different light as to undermine confidence in the verdict.'"  *Banks v. Dretke*, 540 U.S. 668, 672

18   (2004) (citing *Kyles*, 514 U.S. 419, 435 (1995)); *United States v. Bagley*, 473 U.S. 667, 675-76

19   (1985) (holding that evidence is "material" if there is a reasonable probability that the result of a

20   prosecution would have been different had the evidence been disclosed to the defense).  A *Brady*

21   violation occurs when favorable evidence that was exculpatory or impeaching was suppressed by

22   the state willfully or inadvertently, and prejudice resulted. *Strickler v. Greene*, 527 U.S. 263,

23   281-82 (1999).  Therefore, to comply with *Brady*, a prosecutor has a duty to disclose evidence

24   that was exculpatory or impeaching even though it was not requested by the accused.  *Id.* at 280

25   (citing *United States v. Agurs*, 407 U.S. 97, 107 (1976) and *Bagley*, 473 U.S. at 676)).

26         Petitioner contends that Dr. Kyle Krueger from the San Joaquin County General Hospital

                                                        24

1    performed the sexual assault examination on the victim and noted that she did not suffer any

2    vaginal trauma.  He further alleges that Deputy Christopher Stiehr from the San Joaquin County

3    Sheriff's Department was present when the sexual assault examination occurred and that the

4    victim was administered Demerol.  He argues that, as a result, she subsequently lacked focus

5    when she told Detective Stiehr that Petitioner tortured, raped, and forced her to orally copulate

6    him.

7           Petitioner fails to demonstrate the materiality of this evidence.  The trial record reveals

8    that Petitioner's counsel was aware of the rape examination and that the victim received

9    Demerol before and after she made the allegations against Petitioner.  *See* Clerk's Transcript,

10   Vol. II of IV at 327 (prosecution in a supplemental motion in limine that when the victim talked

11   to Deputy Stiehr she was "having 'altered levels of consciousness.'"); Reporter's Transcript,

12   Vol. I of IV at 142, 146-47, 149-52 (during cross-examination of Detective Stiehr, Petitioner's

13   counsel questioned him about the hospital administering Demerol to the victim during Stiehr's

14   questioning); Reporter's Transcript, Vol. IV of V at 870, 873, 875-76 (Dr. Thrailkill was cross-

15   examined regarding the administration of pain medication to the victim); *Id.* at 1089-94 (Dr.

16   Krueger testified regarding the rape exam performed on the victim).  In fact, Dr. Krueger

17   testified several times that he could not say whether the victim was raped.  *Id.* at 1092, 1093.

18   Therefore, the information Petitioner alleges is contained in the purportedly suppressed evidence

19   was actually presented at trial through the testimony of Deputy Stiehr, Dr. Thrailkill, and Dr.

20   Krueger.  No *Brady* violation occurred here because the information in the purportedly

21   suppressed evidence was presented the jury.

**IV**

23          Petitioner has failed to demonstrate that the state courts' decisions were contrary to, or an

24   unreasonable application of a clearly established federal law as determined by the Supreme

25   Court of the United States.  It is hereby ORDERED that Petitioner's application for a writ of

26   habeas corpus is DENIED.  The clerk is directed to enter judgment and close the case.

1  DATED: February 17, 2009

2                                     /s/ Arthur L. Alarcón
                                      UNITED STATES CIRCUIT  JUDGE
3                                     Sitting by Designation

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26